# RECORD NO. 21-1536

In The
## United States Court Of Appeals
For The Fourth Circuit

**In re: INFINITY BUSINESS GROUP, INC.,**
*Debtor,*

---

**ROBERT F. ANDERSON,**
**as Chapter 7 Trustee for Infinity Business Group, Inc.,**
*Trustee - Appellant,*

v.

**MORGAN KEEGAN & COMPANY, INC.,**
**KEITH E. MEYERS,**
*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT COLUMBIA**

---

# PETITION FOR REHEARING AND REHEARING EN BANC OF TRUSTEE-APPELLANT

---

**Mitchell Willoughby**
**Elizabeth Zeck**
**WILLOUGHBY & HOEFER, P.A.**
**930 Richland Street**
**Columbia, SC 29201**
**(803) 252-3300**

**R. Walker Humphrey, II**
**WILLOUGHBY & HOEFER, P.A.**
**133 River Landing Drive, Suite 200**
**Charleston, SC 29492**
**(843) 619-4426**

**Gerald Malloy**
**MALLOY LAW FIRM**
**108 Cargill Way**
**Hartsville, SC 29550**
**(843) 339-3000**

*Counsel for Trustee-Appellant*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF PURPOSE ........................................................................1

BACKGROUND ........................................................................3

ARGUMENT ........................................................................5

I. The novel and far-reaching question of whether trustees can recover under 11 U.S.C. § 544(a)(1) without being subject to in pari delicto is a matter of exceptional importance. ........................................................5

II. The opinion's "undisputed testimony or document[s]" clear error standard conflicts with Supreme Court and Fourth Circuit precedent. ........................................................8

A. Clear error exists when the trial court does not account for disputed evidence. ........................................................8

B. The improper undisputed evidence standard resulted in the opinion generally overlooking and misapprehending evidence ........12

III. The opinion overlooked and misapprehended other points of law. .........14

CONCLUSION ........................................................................17

CERTIFICATE OF COMPLIANCE ........................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. City of Bessemer City, N.C.*,
470 U.S. 564 (1985)....................2, 9

*Anderson v. Morgan-Keegan & Co. (In re Infinity Bus. Grp.)*,
31 F.4th 294 (4th Cir. 2022)....................*passim*

*Angeles Real Est. Co. v. Kerxton*,
737 F.2d 416 (4th Cir. 1984)....................6

*Butts v. United States*,
930 F.3d 234 (4th Cir. 2019)....................8

*Doe v. Menefee*,
391 F.3d 147 (2d Cir. 2004)....................9

*FDIC v. O'Melveny & Myers*,
61 F.3d 17 (9th Cir. 1995)....................5

*Gower v. Farmers Home Admin. (In re Davis)*,
785 F.2d 926 (11th Cir. 1986)....................7

*Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Cap. LLC)*,
716 F.3d 355 (4th Cir. 2013)....................1, 5

*Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.)*,
No. 06-cv-01233-EWN, 2007 WL 2669150 (D. Colo. Sept. 6, 2007)....................7

*Jiminez v. Mary Washington Coll.*,
57 F.3d 369 (4th Cir. 1995)....................2, 9

*Jones v. Wells Fargo Bank, N.A.*,
666 F.3d 955 (5th Cir. 2012)....................5

*Knauer v. Jonathan Roberts Fin. Grp., Inc.*,
348 F.3d 230 (7th Cir. 2003)....................7

*McNamara v. PFS (In re Pers. & Bus. Ins. Agency)*,
334 F.3d 239 (3d Cir. 2003) ....................................................................5, 7

*Miller v. Mercy Hosp., Inc.*,
720 F.2d 356 (4th Cir. 1983) ..............................................................*passim*

*Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*,
816 F.2d 1222 (8th Cir. 1987) ..................................................................7

*Moore v. Berry (In re Moore)*,
No. 20-31195-KLP, 2022 WL 839702 (Bankr. E.D. Va. Mar. 21, 2022) ..................................................................................................7

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
267 F.3d 340 (3d Cir. 2001) .......................................................................5

*Podell & Podell v. Feldman (In re Leasing Consultants, Inc.)*,
592 F.2d 103 (2d Cir. 1979) .......................................................................7

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995) ........................................................................5

*Sender v. Buchanan (In re Hedged-Invest. Assocs., Inc.)*,
84 F.3d 1281 (10th Cir. 1996) .....................................................................5

*Sender v. Porter (In re Porter McLeod, Inc.)*,
231 B.R. 786 (Bankr. D. Colo. 1999).......................................................1, 7

*Taylor v. Maddox*,
366 F.3d 992 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014) ..............................................10

*The Willows II, LLC v. Branch Banking & Tr. Co. (In re The Willows II, LLC)*,
485 B.R. 528 (Bankr. E.D.N.C. 2013).........................................................6

*United States v. Norman*,
935 F.3d 232 (4th Cir. 2019) .....................................................................16

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948)..............................................................................2, 9

*United States v. Wooden*,
693 F.3d 440 (4th Cir. 2012) ....................................................2, 9, 12

*W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*,
781 F. App'x 214 (4th Cir. 2019) ....................................................15

**State Cases**

*Crystal Ice Co. of Columbia, Inc. v. First Colonial Corp.*,
257 S.E.2d 496 (S.C. 1979) ....................................................15

*Gallegos v. Malco Enters. of Nev., Inc.*,
255 P.3d 1287 (Nev. 2011)....................................................6

*Glenbook Cap. Ltd. P'ship v. Dodds (In re Amerco Derivative Litig.)*,
252 P.3d 681 (Nev. 2011)....................................................15, 16

*Moore v. Weinberg*,
644 S.E.2d 740 (S.C. Ct. App. 2007) ....................................................6

*Myatt v. RHBT Fin. Corp.*,
635 S.E.2d 545 (S.C. Ct. App. 2006) ....................................................15, 16

*Reynolds v. Tufenkjian*,
461 P.3d 147 (Nev. 2020)....................................................6

*In re Rural Metro Corp.*,
88 A.3d 54 (Del. Ch. 2014.) ....................................................7

*S.C. Ins. Co. v. James C. Greene & Co.*,
348 S.E.2d 617 (S.C. Ct. App. 1986) ....................................................16

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
112 A.3d 271 (Del. Ch. 2015) ....................................................16

**Federal Statutes**

11 U.S.C. § 541(a)(1)....................................................5, 6

11 U.S.C. § 544(a) ....................................................6, 7

11 U.S.C. § 544(a)(1)....................................................1, 5, 6, 7

11 U.S.C. § 544(b) ....................................................7

11 U.S.C. § 548 ....................................................................................7

**State Statutes**

S.C. Code Ann. § 15-39-410 ....................................................................6

S.C. Code Ann. § 33-8-300 ....................................................................16

S.C. Code Ann. § 33-8-420 ....................................................................16

**Other Authorities**

*Fourth Circuit: Defense of* In Pari Delicto *is Applicable Against Bankruptcy Trustee Pursuing Litigation on Behalf of Estate*, 2022-17 Comm. Fin. News. NL 32 (May 2, 2022)........................................................8

## STATEMENT OF PURPOSE

Trustee-Appellant Robert F. Anderson files this Petition for Rehearing and Rehearing En Banc of the panel's published opinion. *Anderson v. Morgan-Keegan & Co. (In re Infinity Bus. Grp.)*, 31 F.4th 294 (4th Cir. 2022). In counsel's judgment, rehearing and, particularly, rehearing en banc are warranted to:

1. Resolve the exceptionally important question of whether a debtor's conduct bars innocent creditors from recovering their losses under 11 U.S.C. § 544(a)(1).

*In pari delicto* forces innocent creditors to bear losses inflicted by outsiders who join with select corporate insiders to harm a debtor. Whether it applies to trustees proceeding under 11 U.S.C. § 544(a)(1) is a question of first impression that impacts creditors throughout this circuit, including the recovery of over $24 Million here. It therefore is a question of exceptional importance.

Relying on law interpreting a different statute, the opinion held *in pari delicto* applies under § 544(a)(1). *Infinity Bus. Grp.*, 31 F.4th at 301-02. This holding did not recognize the difference between the statutes; was contrary to this Court's general recognition that appointing a receiver or trustee "remove[s] the wrongdoer and change[s] the equities, rendering the application of the punishing *in pari delicto* doctrine unwarranted," *Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Cap. LLC)*, 716 F.3d 355, 367 (4th Cir. 2013); was contrary to the only other court to consider this question, *Sender v. Porter (In re Porter McLeod, Inc.)*,

231 B.R. 786 (Bankr. D. Colo. 1999); and has already been criticized. Rehearing or rehearing en banc is therefore warranted.

2. Resolve the conflict between the opinion's "undisputed evidence" clear error standard and the standard Supreme Court and Fourth Circuit precedent requires.

Identifying unaccounted-for disputed evidence demonstrates clear error. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948); *United States v. Wooden*, 693 F.3d 440, 454 (4th Cir. 2012); *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 381-82, 384 (4th Cir. 1995); *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983). In direct conflict with these precedents, the opinion required proof of *un*disputed evidence contradicting the findings below. *Infinity Bus. Grp.*, 31 F.4th at 303. Rehearing or rehearing en banc is necessary to secure and maintain uniformity of the Court's decisions.

3. Consider the law misapprehended and overlooked regarding other exceptions to *in pari delicto*.

Panel rehearing is warranted because the opinion overlooked and misapprehended the "collusion exception" standard, the holdings of Nevada and South Carolina courts, and authorities supporting fiduciary duty and aiding and abetting breach of fiduciary duty exceptions.

## BACKGROUND

Debtor Infinity Business Group's (IBG) primary revenue was the state-mandated fee earned for collecting bad checks. IBG was promising but needed money. [JA 912.] It hired Defendants-Appellees Morgan Keegan & Company, Inc. and Keith E. Meyers (collectively, MK Defendants) in 2006 to secure capital. [JA 3962-69.] The parties signed another engagement in 2008 [JA 3131-34], and Meyers continued searching for investors into late 2009 [JA 3584-88].

IBG originally complied with generally accepted accounting principles (GAAP). [JA 748-49.] After IBG hired MK Defendants, an undisputedly fraudulent accounting policy was established and retroactively applied that materially overstated revenues and accounts receivables by counting check collection proceeds before they were earned. [JA 737-38, 761-65, 1272-79.] The fraudulent policy concealed that IBG was hemorrhaging cash. [*See* Tr. Final Br. at 11 (providing a summary financial chart).] Certain members of IBG's management, notably CEO Bryon Sturgill and CFO Haines Hargrett, helped implement these changes.[1] At a minimum, MK Defendants knew of the changes, understood the new policy violated basic accounting rules, and suggested

[1] Sturgill, Hargrett, President and Chairman Wade Cordell, COO Brad Cordell, and General Counsel John Blevins (collectively, Management Defendants) were defendants below. All defendants except MK Defendants confessed judgment or defaulted. They are not parties on appeal and are, practically speaking, judgment proof.

inaccurate and misleading disclosure language. [*E.g.*, JA 738-39, 804, 916, 1406-08, 1417-19, 1792-93, 1890.] There is no evidence MK Defendants or Management Defendants disclosed the truth to innocent management. MK Defendants also knew IBG's financial statements did not describe the true policy. [*Compare* JA 1408 (true policy), *with* JA 3734, 3750, 3764, 3780, 3797 (disclosed policy).] Evidence showed the fraudulent policy caused IBG losses of over $24 Million. [JA 774-75, 783-84.]

Before this Court are Trustee's claims against MK Defendants for aiding and abetting breach of fiduciary duty, breach of fiduciary duty, Rule 10b-5 securities fraud, and common law fraud.[2] The Bankruptcy Court found for MK Defendants. Relevant here, the court imputed Management Defendants' knowledge and actions to IBG, thereby deeming IBG a "wrongdoer," and concluded *in pari delicto* bars recovery. [JA 293-96.] Trustee appealed this finding and others to the District Court. The District Court affirmed, and Trustee appealed to this Court. The opinion affirmed the Bankruptcy Court's *in pari delicto* findings and did not reach the other appealed issues.

---

[2] The opinion asserted Trustee abandoned his Rule 10b-5 claim. *Infinity Bus. Grp.*, 31 F.4th at 300. However, Trustee appealed all four claims. [*E.g.*, Tr. Final Br. at 77-78.]

## ARGUMENT

### I. The novel and far-reaching question of whether trustees can recover under 11 U.S.C. § 544(a)(1) without being subject to *in pari delicto* is a matter of exceptional importance.

This Court and others have observed that *in pari delicto* logically should not apply against bankruptcy trustees because the "wrongdoer" has been removed. *Derivium Cap.*, 716 F.3d at 367; *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 357 (3d Cir. 2001); *Sender v. Buchanan (In re Hedged-Invest. Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996); *see also Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012), *Scholes v. Lehmann*, 56 F.3d 750, 754-55 (7th Cir. 1995); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995). This ensures those who harm debtors are answerable for their actions without forcing innocent creditors to bear that loss.

In *Derivium Capital*, this Court held *in pari delicto* nevertheless applies to trustees bringing claims in the *debtor's* shoes under 11 U.S.C. § 541(a)(1) because trustees are subject to any defenses existing against the debtor "as of the commencement of the" bankruptcy. 716 F.3d at 367. At issue here, however, is whether § 544(a)(1) requires the same when trustees bring claims standing in a *creditor's* shoes. *See McNamara v. PFS (In re Pers. & Bus. Ins. Agency)*, 334 F.3d 239, 246-47 (3d Cir. 2003) ("[W]ithout that language there is no reason not to follow the better rule, under which [the debtor's] conduct would not be imputed to the

Trustee because it would lead to an inequitable result....”). This question is exceptionally important, as it is novel and significantly impacts recovery for IBG’s innocent creditors and others throughout this circuit.

Section 544(a)(1) grants trustees the “rights and powers” of hypothetical judgment lien creditors, including any state law rights to bring claims belonging to debtors. *Angeles Real Est. Co. v. Kerxton*, 737 F.2d 416, 418 (4th Cir. 1984). This right exists under Nevada and South Carolina law, either of which may apply here. *See* S.C. Code Ann. § 15-39-410; *Gallegos v. Malco Enters. of Nev., Inc.*, 255 P.3d 1287, 1289 (Nev. 2011); *Moore v. Weinberg*, 644 S.E.2d 740, 745 (S.C. Ct. App. 2007); *see also Reynolds v. Tufenkjian*, 461 P.3d 147, 153-54 (Nev. 2020) (holding a creditor can obtain a debtor’s claims for pecuniary loss).

While § 544(a) also grants trustees the rights of creditors “as of the commencement of the case,” it differs from § 541(a)(1) in that it confers these rights “without regard to any knowledge of the trustee or of any creditor.” The opinion held this language does not restrict consideration of a debtor’s knowledge. *Infinity Bus. Grp.*, 31 F.4th at 302 n.1. But, as noted during oral argument, courts within this circuit have held a debtor’s knowledge is *not* imputed under § 544(a)(1). *E.g., The Willows II, LLC v. Branch Banking & Tr. Co. (In re The Willows II, LLC)*, 485 B.R. 528, 532 (Bankr. E.D.N.C. 2013). The “without regard” language is meaningless if it does not preclude imputing a debtor’s knowledge to trustees.

Case law otherwise supports Trustee's argument. The only other court to consider this precise question held *in pari delicto* does not apply under § 544(a)(1).[3] *Porter McLeod*, 231 B.R. at 794. The opinion cited *Porter McLeod* for a different proposition and not for this issue. *See Infinity Bus. Grp.*, 31 F.4th at 302. *In pari delicto* also does not apply to trustees bringing avoidance claims under §§ 544(a), 544(b), or 548. *E.g., Pers. & Bus. Ins. Agency*, 334 F.3d at 246-47; *Gower v. Farmers Home Admin. (In re Davis)*, 785 F.2d 926, 927 (11th Cir. 1986); *Podell & Podell v. Feldman (In re Leasing Consultants, Inc.)*, 592 F.2d 103, 111 (2d Cir. 1979); *Moore v. Berry (In re Moore)*, No. 20-31195-KLP, 2022 WL 839702, at *6 (Bankr. E.D. Va. Mar. 21, 2022). While Trustee did not seek avoidance against MK Defendants, these cases demonstrate *in pari delicto* does not inexorably apply to trustees.[4]

---

[3] Some courts hold § 544(a)(1) only allows avoidance and no other claims. *E.g., Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222, 1226-30 (8th Cir. 1987). Those opinions are wrongly decided principally because § 544(a) grants trustees the rights and powers of a creditor *and* avoidance powers. *Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.)*, No. 06-cv-01233-EWN, 2007 WL 2669150, at *10-13 (D. Colo. Sept. 6, 2007). The opinion rightly did not follow those decisions. And while *MS55* suggests § 544(a)(1) requires the breach of a duty owed to creditors, *id.* at *8, nothing in the statute or applicable state law requires this.

[4] Avoidance seeks the return of "diverted funds from the beneficiaries of the diversions" instead of tort recovery from one who did not receive a transfer. *Knauer v. Jonathan Roberts Fin. Grp., Inc.*, 348 F.3d 230, 236 (7th Cir. 2003). Here, the lack of a transfer to MK Defendants before IBG collapsed, *i.e*, payment for their services, is irrelevant. Failing to get paid does not eliminate liability for damage caused in their pursuit. *See In re Rural Metro Corp.*, 88 A.3d 54, 100 (Del. Ch. 2014.).

Finally, a retired bankruptcy judge has already criticized the opinion:

> When a trustee is prevented from pursuing valuable litigation on behalf of the estate and its innocent creditors because of the very wrongful acts which took the debtor down to its creditors' detriment, something seems wrong with this picture. The Court's reasoning - that the trustee stands in the shoes of the debtor, subject to all defenses - has always seemed to me to ignore that the bankruptcy estate is a distinct entity from the debtor and thus should be treated differently.

Hon. Meredith Jury, *Fourth Circuit: Defense of* In Pari Delicto *is Applicable Against Bankruptcy Trustee Pursuing Litigation on Behalf of Estate*, 2022-17 Comm. Fin. News. NL 32 (May 2, 2022).

Trustee therefore respectfully requests that this Court grant rehearing or rehearing en banc to review and consider this exceptionally important question.

**II. The opinion's "undisputed testimony or document[s]" clear error standard conflicts with Supreme Court and Fourth Circuit precedent.**

**A. Clear error exists when the trial court does not account for disputed evidence.**

The opinion correctly named the "clear error" standard of review for the Bankruptcy Court's factual findings. *Infinity Bus. Grp.*, 31 F.4th at 301. But the standard it applied irreconcilably conflicts with that imposed by the Supreme Court and this Court. Rehearing or rehearing en banc is warranted to resolve this conflict.

"[W]hile clear error is deferential, it is not toothless." *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019). The standard focuses "upon fact-finding processes rather than directly upon fact-finding results." *Miller*, 720 F.2d at 361. A

finding therefore is clearly erroneous when, "although there is evidence to support it," *U.S. Gypsum Co*., 333 U.S. at 395, the trial court fails to account for contrary evidence, *Miller*, 720 F.2d at 36; *Jiminez*, 57 F.3d at 379; *Wooden*, 693 F.3d at 454. Trial courts specifically must account for documentary evidence which contradicts testimony on which their findings are based. *See Anderson*, 470 U.S. at 575 (holding clear error may exist "even in a finding purportedly based on a credibility determination" where "[d]ocuments or objective evidence may contradict the witness' story"); *U.S. Gypsum Co*., 333 U.S. at 395 ("Where such testimony is in conflict with contemporaneous documents we can give it little weight…."). In sum, disputed evidence can create—not prevent—clear error.

Accounting for disputed evidence is essential, for a trial court cannot engage in a "scrupulous," *Infinity Bus. Grp.*, 31 F.4th at 297, fact finding process when it ignores one party's proof. Two cases cited in *Wooden* underscore the importance of this duty. *See Wooden*, 693 F.3d at 454. In one, then-Judge Sotomayor explained:

> We have found a district court's factual findings to be clearly erroneous where the court has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation. Thus, we have reversed factual findings…where the court failed to weigh all of the relevant evidence before making its factual findings.

*Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004). In another, Judge Kozinski observed:

> In making findings, a judge must acknowledge significant portions of the record, particularly where they are inconsistent with the judge's findings. The process of explaining and reconciling seemingly inconsistent parts of the record lays bare the judicial thinking process, enabling a reviewing court to judge the rationality of the fact-finder's reasoning. On occasion, an effort to explain what turns out to be unexplainable will cause the finder of fact to change his mind. By contrast, failure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding.

*Taylor v. Maddox*, 366 F.3d 992, 1007-08 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

The opinion did not acknowledge this standard or determine whether the Bankruptcy Court fulfilled its duty. It simply affirmed the finding that Meyers did not know IBG's accounting was fraudulent before the July 2008 Transaction Services Report only because Meyers said so and Trustee had not identified contrary "undisputed testimony or document[s]."[5] *Infinity Bus. Grp.*, 31 F.4th at 303. This was the sole basis for rejecting *in pari delicto*'s collusion exception. However, requiring undisputed evidence for clear error irreconcilably conflicts with Supreme Court and Fourth Circuit precedent expressly predicating clear error on unaccounted-for disputed evidence.

This error was material, as no court has accounted for Trustee's knowledge evidence. The Bankruptcy Court in fact believed Meyers' lack of knowledge before

[5] The Transaction Services Report was a third-party due diligence report prepared for a prospective investor that laid bare the fraud. [*E.g.*, JA 3275-76, 3288.]

2008 was "uncontradicted."[6] [JA 266.] Trustee, however, presented substantial evidence demonstrating his knowledge. For example, Meyers admitted his accounting knowledge makes him a better investment banker, allowing him to spot errors in financial statements better than "top-notch" audit firms [JA 976-81]; both parties' experts agreed Meyers knew GAAP's revenue recognition rules in 2006 [JA 737-39, 804], and Meyers understood the policy violated these rules [JA 916].

Moreover, unaccounted-for evidence demonstrated Meyers could not rely on assurances from Sturgill and IBG's outside auditor that the policy was proper, *e.g.*: Professor John Freeman testified without contradiction that blind reliance is improper [JA 692]; Meyers knew Sturgill lied about failing the CPA exam six times[7] [JA 2591-2617]; Meyers knew Sturgill's claim that the new policy caused receivables to jump $9.8 Million from 2003-2005 by including "hard collections" was false because hard collections only began in June 2005 and generated just $146,775.15 that year [JA 914-15, 932-36, 1230-32; 1493-94, 4803-04]; the auditor's work product was riddled with errors [JA 703-09, 3724-30]; and Meyers knew the policy's retroactive application was hidden by a fraudulent back-dated audit opinion [JA 761-65, 1890].

---

[6] While the opinion suggests the Bankruptcy Court considered this evidence and found it "speculative," *Infinity Bus. Grp.*, 31 F.4th at 303, the argument found to be speculative was that Meyers *created* the policy [JA 319].

[7] Both courts reference Sturgill's failures but not in this context.

The Bankruptcy Court was not required to accept this evidence, but it was required to account for it. *Wooden*, 693 F.3d at 454; *Miller*, 720 F.2d at 361. Because the court did not, rehearing is warranted to consider and correct this prejudicial conflict with controlling Supreme Court and Fourth Circuit precedent.

### B. The improper undisputed evidence standard resulted in the opinion generally overlooking and misapprehending evidence.

The Bankruptcy Court adopted Meyers' and Clark's testimony wholesale on all material points. Trustee provided over 40 pages of briefing identifying substantial (often contemporaneous and documentary) evidence contradicting their testimony that the Bankruptcy Court did not discuss. [Tr. Final Br. at 35-58; Tr. Reply Br. at 6-25.] MK Defendants never argued the court accounted for this evidence. But the opinion nevertheless restates challenged findings as established fact, often citing just the Bankruptcy Court's order [JA 215-348] without addressing the unaccounted-for contrary evidence.

For example:

<u>MK Defendants could rely on data provided by IBG without independent verification</u>. *Infinity Bus. Grp.*, 31 F.4th at 297. To date, no court has accounted for Meyers' testimony that this language only meant Morgan Keegan would not hire outside auditors [JA 906], the undisputed testimony that Morgan Keegan could not contract out of its legal obligation to verify IBG's data [JA 691, 1001], and MK Defendants attempted to verify the data [JA 875, 906, 922-24].

MK Defendants worked only as IBG's securities placement agent in 2006 and not a general financial advisor. 31 F.4th at 297, 299. Both courts overlooked Meyers' pitch to serve as IBG's "ideal long-term advisor" [JA 1076], MK Defendants' authorization for IBG to publicly describe Morgan Keegan as its "financial advisor" [JA 1834-37], and testimony from multiple witnesses, including MK Defendants' expert, confirming Meyers provided advisory services in 2006 [JA 646-47, 665-66, 685, 839, 1001].

IBG's board "blessed" the fraudulent accounting policy in January 2007. 31 F.4th at 297, 299. Both courts overlooked the undisputed evidence that IBG's true accounting policy and its fraudulent nature were not disclosed to innocent management. [*E.g.*, JA 460, 515-17; *see also* JA 673-75, 835-38.] Innocent management therefore was uninformed and could not "bless" the policy.

MK Defendants' role with the fraudulent private placement memorandum used to raise most of IBG's capital was limited to "adapting material from its earlier memo and providing relatively minimal line edits on documents prepared by others." 31 F.4th at 298. The Bankruptcy Court disregarded MK Defendants' deep involvement with this offering document as detailed in Trustee's briefing. [Tr. Final Br. at 17-20, 48-50; Tr. Reply Br. at 19-23.] Numerous contemporaneous exhibits show their heavy hand, including Meyers' admission that the earlier memo was "WAY out of date and cannot be used in its current form" [JA 1527-29], Clark's

preparation of the new document's first draft, and Meyers' and Morgan Keegan's attorneys' extensive, not "relatively minimal," redlines. [JA 1546-1586, 1671-1758, 2202-2331.]

"Meyers continued to push Infinity to change its policy" after receiving the Transaction Services Report. 31 F.4th at 300. Both courts overlooked Meyers' ghost-writing of Management Defendants' responses to the report which concealed the fraud [JA 3417-62] and testimony that Meyers "didn't actively take a position one way or the other" on whether IBG should stop using the fraudulent policy [JA 4917].

Meyers only "provid[ed] a 'general overview' of Infinity's services" at the September 2008 national sales meeting. 31 F.4th at 300. The opinion only cites the Bankruptcy Court's order as support. However, the court *refused* to determine what Meyers said at the meeting because the evidence conflicted. [JA 271 n.33.] Meyers claimed he merely gave the general overview [JA 1011], whereas five individuals testified Meyers made fantastic predictions about IBG's investment potential [JA 481-83, 518-30, 576-78, 602-07, 634-41].

This discussion is not exhaustive, but it highlights how failing to account for Trustee's evidence wrongly influenced the opinion's factual narrative.

## III. The opinion overlooked and misapprehended other points of law.

The opinion, like the Bankruptcy Court, did not define the standard for *in pari delicto*'s collusion exception. It affirmed on collusion only because it believed the

finding regarding Meyers' alleged lack of knowledge was not clearly erroneous.[8] *Infinity Bus. Grp.*, 31 F.4th at 303. But the collusion exception does not require knowledge of fraud. It only requires that Meyers had reason to believe Management Defendants were not telling innocent management about the true policy. *See Crystal Ice Co. of Columbia, Inc. v. First Colonial Corp.*, 257 S.E.2d 496, 498 (S.C. 1979). Under the exception, MK Defendants cannot claim Management Defendants' knowledge is imputed to IBG thereby subjecting IBG to *in pari delicto*, if MK Defendants have reason to believe Management Defendants would not share that knowledge internally. Rehearing is warranted to consider the Bankruptcy Court's failure to apply the proper collusion standard. *Miller*, 720 F.2d at 361.

The opinion also misapprehended the law regarding the breach of fiduciary duty and aiding and abetting breach of fiduciary duty exceptions.[9] The opinion believed Nevada and South Carolina already held *in pari delicto* applies to aiding and abetting and breach of fiduciary duty claims. *Infinity Bus. Grp.*, 31 F.4th at 304-05 (citing *Glenbook Cap. Ltd. P'ship v. Dodds (In re Amerco Derivative Litig.)*, 252 P.3d 681, 694-97 (Nev. 2011); *Myatt v. RHBT Fin. Corp.*, 635 S.E.2d 545, 546-47 (S.C. Ct. App. 2006)). Yet, neither *Amerco* nor *Myatt* addressed whether these

---

[8] As discussed above, that finding was clearly erroneous.

[9] MK Defendants failed to brief any opposition to this argument and therefore forfeited one. *See W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 226 (4th Cir. 2019) (Richardson, J.).

claims are exempt from *in pari delicto*. *Amerco*, 252 P.3d at 694-97; *Myatt*, 635 S.E.2d at 547-48. These cases therefore do not hold *in pari delicto* applies to these claims. *See United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019) ("[U]nder our adversarial system of justice, an unchallenged and untested assumption is simply not a holding that binds future courts.").

By misapprehending *Amerco* and *Myatt*, the opinion overlooked the basis for these exceptions. Nevada borrows heavily from Delaware for aiding and abetting and *in pari delicto*. *See Amerco*, 252 P.3d at 694-97; *id.* at 702. After *Amerco*, the Delaware Court of Chancery held certain aiding and abetting claims are not subject to *in pari delicto*. *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 318-19 (Del. Ch. 2015). In South Carolina, *in pari delicto* does not bar claims against inside fiduciaries. S.C. Code Ann. §§ 33-8-300, -420. That rule must extend to outside fiduciaries, as allowing them to avoid liability by joining with select insiders encourages outsiders to enlist insiders in fraud and violates South Carolina's policy that "[t]he concept of fault lies at the core of common law tort liability" and "[o]nly the strongest of reasons should compel the law to depart from the fault principle." *S.C. Ins. Co. v. James C. Greene & Co.*, 348 S.E.2d 617, 626 (S.C. Ct. App. 1986).

Panel rehearing is therefore warranted.

## CONCLUSION

For good cause shown above, Trustee respectfully requests that the Court direct a rehearing or rehearing en banc.

Respectfully submitted,

**WILLOUGHBY & HOEFER, P.A.**
s/Mitchell Willoughby
Mitchell Willoughby
Elizabeth Zeck
930 Richland Street
Columbia, South Carolina 29201
(803) 252-3300
mwilloughby@willoughbyhoefer.com
ezeck@willoughbyhoefer.com

R. Walker Humphrey, II
133 River Landing Drive, Suite 200
Charleston, South Carolina 29492
(843) 619-4426
whumphrey@willoughbyhoefer.com

**MALLOY LAW FIRM**
Gerald Malloy
108 Cargill Way
Hartsville, South Carolina 29550
(843) 339-3000

*Counsel for Robert F. Anderson, as Chapter 7 Trustee for Infinity Business Group, Inc.*

May 17, 2022
Columbia, South Carolina

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with Fed. R. App. P. 35(b)(2), which sets the type-volume limits of this Petition for Rehearing and Rehearing En Banc to 3,900 words excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   this document contains 3,898 words.

2. This document complies with the typeface requirements because:

   This document has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

**WILLOUGHBY & HOEFER, P.A.**
s/Mitchell Willoughby
Mitchell Willoughby